IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MILLERCOORS LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO. 17-CV-1955** |
| | ) | |
| v. | ) | **JUDGE** |
| | ) | |
| **HCL TECHNOLOGIES LIMITED,** | ) | **MAGISTRATE JUDGE** |
| AND **HCL AMERICA, INC.,** | ) | |
| | ) | **JURY DEMAND REQUESTED** |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

NOW COMES Plaintiff MillerCoors LLC ("MillerCoors"), by its attorneys George R. Spatz and Amy Starinieri Gilbert of McGuireWoods LLP, and for its Complaint against Defendants HCL Technologies Limited and HCL America, Inc. (collectively "HCL" or "Supplier"), hereby states as follows:

### INTRODUCTION

1. This matter arises from HCL's failure to deliver an enterprise software solution to MillerCoors on time and in accordance with the requirements of the parties' agreements. HCL enjoyed an extended period of time to learn and understand MillerCoors' business and its processes and determine the level of effort required to successfully deliver the software. Yet, HCL repeatedly failed to meet the project deadlines it recommended and agreed to. The software solution HCL did deliver was not free of defects as required and failed to meet basic performance requirements and industry standards. Further, HCL failed to provide an adequate staff with the requisite skills to achieve its contractual commitments. HCL utterly failed to provide leadership on the project and adhere to its program management and quality assurance obligations. Not only

did HCL fail to perform under the contract, but also HCL's failure to staff the project with a sufficient number of people and failure to follow its own methodology and quality assurance processes was done knowingly, or with reckless disregard for the impact such actions would have on MillerCoors. HCL's actions have caused MillerCoors significant damages for which MillerCoors is entitled to redress.

**PARTIES**

2. MillerCoors is a Delaware limited liability company with its principal place of business located at 250 South Wacker Drive, Chicago, Illinois 60606. MillerCoors' members are MC Holding Company LLC, a Colorado limited liability company, and MillerCoors Holding LLC, a Colorado limited liability company. Both MC Holding Company LLC and MillerCoors Holding LLC are wholly-owned by Molson Coors Brewing Company, a Delaware corporation. Through its diverse collection of storied breweries, MillerCoors brings American beer drinkers an unmatched selection of the highest quality beers, flavored malt beverages and ciders. MillerCoors' goal is to become America's best beer company through an uncompromising dedication to quality, a keen focus on innovation and a deep commitment to sustainability.

3. HCL Technologies Limited is a company registered under the laws of India with its principal place of business in Noida, India. HCL America, Inc. is a California corporation with its principal place of business located at 330 Potrero Avenue, Sunnyvale, California 94085. HCL holds itself out as the world's most experienced SAP consultants with extensive SAP capabilities and a deployment methodology that accelerates and automates deployment tasks while reducing risk.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are citizens of different States and/or a foreign state and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over HCL pursuant to, at least, 735 ILCS 5/2-209 (a)(7), because this matter arises in part from the making or performance of a contract or promise substantially connected with the State of Illinois.

6. Venue is proper under, at least, 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois.

7. In addition, the parties consented to jurisdiction and venue in the Northern District of Illinois by agreement as follows: "The parties agree that all actions and proceedings arising out of or related to this Agreement shall be brought only in a state or federal court located in Cook County, Illinois, and the parties hereby consent to such venue and to the jurisdiction of such courts over the subject matter of such proceeding and themselves."

### STATEMENT OF FACTS

8. On or about September 18, 2013, MillerCoors issued a Request for Proposal (RFP) for a Business Process and System Transformation (BP&S) Realization project. The project was aimed at driving efficiencies, innovation and growth across MillerCoors' various breweries by adopting a common set of best practice business processes and implementing them in a new enterprise SAP software solution.

9. SAP is a leading enterprise resource software solution that integrates and allows data to be shared across all aspects of business in one system, including, for example, accounting, sales, production, warehouse operations, distribution, security and human resources. Customizing

the various modules of the SAP software to address a particular business' needs and writing new reports, programs and tools is a complex undertaking and MillerCoors was looking for an experienced SAP consulting firm to manage and implement SAP for MillerCoors.

10. MillerCoors expected the successful bidder on the RFP to propose an optimal approach, staffing, and price for the project and further to provide program leadership and governance to plan and execute the project. MillerCoors required all bidders to propose a realistic project timeline and schedule for deliverables based on their experience with and expertise in SAP projects.

11. HCL responded to the RFP touting, among other things, its proven framework and methodology for the management of SAP projects, which HCL referred to as the Integrated Global Delivery Model (iGDM). HCL acknowledged that the scale and complexity of the project required centralized program management to deliver the plan and emphasized its strong governance model for managing activities, including ensuring quality through, among other things, an independent quality assurance team, testing sufficient to ensure a system that is defect free, and strong adherence to gate entry and exit criteria.

12. Ultimately, HCL was the successful bidder on the BP&S project.

13. Prior to engaging HCL, MillerCoors created "blueprints" to document the various business processes that would be implemented in SAP. HCL's initial task was to engage in a knowledge transfer process to learn and understand the blueprints that had been created. HCL would then document and fill any gaps in the blueprints for processes that were not adequately documented. This process was referred to as Delta Blueprinting. The knowledge transfer project was memorialized in an interim Work Order No. 1 BP&S Program Knowledge Transfer – SAP Realization Services executed on or about December 3, 2013 ("KT Work Order"). The KT Work

Order was issued under an existing Master Services Agreement by and between MillerCoors and HCL effective December 1, 2012 (the "MSA").

14. Following knowledge transfer, MillerCoors and HCL entered into a separate work order for the remainder of the program, Work Order No. 1 BP&S Program Phase II – SAP Realization Services executed on or about January 17, 2014 ("Work Order No. 1"), for a fixed price of $52,901,013.50, inclusive of expenses.

15. As the project progressed, in or about May 2014, a dispute arose regarding the completeness of the business process blueprinting that had been previously conducted and the level of effort required for HCL to do or redo the blueprinting and complete the Delta Blueprinting. HCL informed MillerCoors that the problems in completing Delta Blueprinting would delay the project five months. In or about June 2014, HCL further informed MillerCoors that the work to complete Delta Blueprinting would be at a significant additional cost.

16. This delay posed a problem for MillerCoors, because the delay pushed the brewery deployments into MillerCoors' brewery peak season, a time period MillerCoors had informed HCL was a black out period for any new software releases.

17. This dispute led to the execution of an amended and restated Work Order executed on or about October 31, 2014 ("Work Order No. 1-1") which included an extension of Delta Blueprinting and an updated deployment plan. An additional $9,630,236 was added to the contract price for HCL to fill the gaps in the business process blueprinting and to account for the adjusted time frames for HCL to deliver the solution.

18. The revised deployment plan staged the deployment of the solution to first go live at MillerCoors' brewery located in Virginia's Shenandoah Valley (Shenandoah) with subsequent deployments in MillerCoors' remaining breweries. The second brewery scheduled to go live was

MillerCoors' Golden, Colorado brewery (Golden). The revised schedule set an October 5, 2015 milestone completion date for the Go-Live at Shenandoah and an April 4, 2016 milestone completion date for the Go-Live at Golden. This extension provided HCL additional time from HCL's initial estimate of a five month delay to build, test and deploy the software.

19. By the time the parties entered into Work Order No. 1-1, HCL had been on the project for over ten months and had a thorough understanding of MillerCoors' processes and systems. HCL assured MillerCoors that at this point it had full knowledge of the scope of the project and that HCL would complete the project within the revised time frames and costs. HCL represented that it would staff the project appropriately and would be able to meet the new milestone schedule. HCL also represented that it understood MillerCoors' constraints, including an inability to deploy a solution during brewery peak season and the associated need for schedule adherence. HCL committed to these things in Work Order No. 1-1.

20. Specifically, HCL acknowledged that going forward it would be responsible for any failure of HCL to accurately estimate the necessary effort to complete the project and, likewise, that it would be responsible for any cost associated with any further delay due to HCL's non-performance. To this end, the parties included the following language in Work Order No. 1-1:

> Supplier has had sufficient opportunity to perform, and has performed, extensive and complete due diligence regarding this scope of work and all prior work done on which this scope of work is dependent. Supplier shall not, under any circumstances, be relieved of any of its obligations to deliver the scope of this Work Order and shall not be entitled to request any increases in Permitted Charges, as a result of:
>
> - Supplier's failure to review any materials made available by MillerCoors with respect to work performed prior to the date of this Work Order or as part of the RFP process;
> - Any inaccuracies that could have been corrected [in] Supplier's due diligence and related discussion with MillerCoors;
> - Any part of the scope of this Work Order that requires more effort than originally estimated; or

6

- Changes in timelines required as a result of Supplier's non-performance even if timeline changes are a requirement of planning around MillerCoors constraints such as Brewery "Peak Seasons."

(Work Order No. 1-1 § 3.5.)

21. Despite the additional time and resources provided to HCL, HCL was unable to adequately staff the project and maintain the project schedule.

22. To assist HCL, in or about May 2015, MillerCoors agreed to reduce scope and delay scope to the Golden release to allow timely delivery of the Shenandoah solution. The parties captured some of these changes, for example, de-scoping training from HCL's responsibilities, in another amended and restated Work Order executed on or about July 1, 2015 ("Work Order No. 1-2").

23. Again, to assist HCL, in or about September 2015, the parties agreed to add additional payment milestones to the schedule to help facilitate cash flow to HCL. This allowed HCL to receive payments prior to completing certain development efforts. HCL maintained that this would assist HCL in bringing its performance up to the contractual requirements. The parties memorialized this agreement in another amended and restated Work Order executed on or about December 10, 2015 ("Work Order No. 1-3"). Work Order No. 1-3 was the final work order entered into by the parties. The MSA and Work Orders are collectively referred to herein as the "Agreement."

24. Despite MillerCoors' efforts, HCL's inability to staff the project with an adequate number of resources and inability to adhere to the schedule persisted.

25. Among other things, HCL had critical leadership turnover. HCL replaced two Program Directors and, at least, seven Project Managers over the course of the project. HCL also had high turnover in integration leads, security and control leads, testing leads and cut-over leads.

26. Throughout the project HCL failed to or was slow to staff critical functional and technical areas. For example, MillerCoors repeatedly raised the need for additional resources on SAP's Global Available to Promise (GaTP) module, which module provides availability information of products across MillerCoors' global operations, and SAP's Extended Warehouse Management (eWM) module, which module provides automated support for high-volume warehouses, to maintain the project timeline. However, these resources were not brought in a timely manner, which significantly impacted the project.

27. Despite agreeing to accept program management responsibilities, HCL's project tracking and reporting was severely lacking, planning for future phases of the project was not completed and the overall program plan lacked appropriate effort estimates to validate timelines.

28. In several instances, extra effort was required because HCL's designs were not able to support requirements and needed to be reworked or validated.

29. In addition, as the project faltered, HCL violated its own project methodology and Program Management responsibilities. Despite committing to MillerCoors that HCL would provide strong program management and independent quality assurance processes that would, among other things, strictly adhere to stage gate criteria, HCL passed the project through stage gates without satisfying the Agreement's criteria and, otherwise, failed to adhere to its own methodology by, for example, not providing the quality assurance reviews that it had promised.

30. MillerCoors repeatedly raised with HCL its concern that HCL failed to satisfy its obligation to maintain an adequate number of qualified resources on the project by managing the

8

project to meet HCL's internal financial targets and reducing resources and securing lower skilled resources without regard for the impact such actions were having on the quality of deliverables and project deadlines.

31. To placate MillerCoors, in or about August 2015, HCL provided assurance to MillerCoors' executives that HCL would execute the milestones to ensure a successful go live without focus on financial goals.

32. Ultimately, HCL was unable to meet its contractual commitment to deliver the Shenandoah release on the revised and delayed delivery date of October 5, 2015.

33. The Shenandoah release eventually went into production on November 2, 2015.

34. The release, however, did not meet the Agreement's completion criteria and suffered from a high level of defects and quality problems. The final testing for the Shenandoah release resulted in 80 defects, including eight defects of critical severity and 47 defects of high severity. Once the software was released, the Shenandoah facility operated, contrary to HCL's promise, at below pre-implementation efficiency.

35. Due to these problems, Shenandoah went into a period of extended post-go live, hyper-care support where thousands of additional defects and incidents were recorded.

36. In early 2016, HCL informed MillerCoors that HCL was going to roll resources off the project without providing the clarity, to which MillerCoors was entitled, as to the impact this action would have on the project. HCL further informed MillerCoors that the Shenandoah stabilization efforts would extend into April 2016, creating business risk to MillerCoors' brewery peak season, and that due to HCL's focus on stabilizing Shenandoah, the Golden release would be further delayed.

37. Due to the mounting issues, on March 8, 2016, MillerCoors sent a letter to HCL demanding that HCL remediate the Shenandoah solution, deliver an approved detailed program plan, and fill all key role positions with qualified personnel by March 31, 2016. MillerCoors further demanded that HCL provide sufficient leadership to deliver the requisite activities and deliverables outlined in the parties' Agreement.

38. Despite MillerCoors' demand, the remediated code did not get put into production until April 24, 2016 after HCL missed additional commitments it made to release the remediated code on April 4, 2016 and April 17, 2016.

39. HCL further failed to provide a detailed project plan acceptable to MillerCoors and, instead of filling key roles and enhancing its leadership, HCL removed an Integration Manager from the project.

40. HCL's failure to deliver on time and with quality created significant harm to MillerCoors' business. HCL's inability to provide an appropriate going forward plan put MillerCoors at risk of further harm.

41. Due to the multiple failures on the project and the risk that these failures created, on June 20, 2016, MillerCoors sent HCL a notice of termination of Work Order No. 1-3, exercising its right to terminate HCL from the project and to secure a new supplier to remediate HCL's work and complete the project going forward.

42. At the time of MillerCoors' notice, the Shenandoah release remained in hyper-care and several defects persisted, including ten defects with critical and high severity. MillerCoors further had determined that the warehousing solution (eWM) did not comply with industry standards as it was not sustainable and would need to be replaced.

43. HCL had already delivered multiple project milestones late and had already missed the milestone dates for several upcoming milestones as follows:

| No. | Milestone | Due Date | Delivery Date |
|---|---|---|---|
| 7 | Core Procurement Realization Test Stage Gate Complete | 1/2/2015 | 1/28/2015 |
| 8 | Integrated Supply Chain and Finance Build Stage Gate Complete | 1/30/2015 | 9/29/2015 |
| 9 | Core Procurement Go-Live & PP&S Comp Go Live | 3/2/2015 | 3/2/2015 (missing deliverables) |
| 10 | Integrated Supply Chain and Finance ITC 2 Complete | 5/1/2015 | 8/5/2015 |
| 11 | Integrated Supply Chain and Finance Golden Delta Blueprint Complete & PP&S Succession Mgmt Post Go Live Support Complete | 6/19/2015 | 9/22/2015 |
| 12 | Integrated Supply Chain and Finance Shenandoah Go-Live | 10/5/2016 | 11/2/2015 |
| No. | Milestone | | Due Date |
| 14 | Integration Supply Chain and Non-Core Miller 6 Delta Blueprint Complete | | 1/8/2016 |
| 15 | Integrated Supply Chain and Finance Golden Go-Live | | 4/4/2016 |
| 16 | Integration Supply Chain and Non-Core Miller 6 Build Stage Gate Complete | | 5/13/2016 |
| 22 | Release 1&2 Post Go Live Support Complete, PP&S "ALL IN" APRIL (Build, Realization Test, Post Go Live) | | 2/28/2016, 4/15/2016, 5/23/2016 |

These delays were material as they impacted MillerCoors' brewery operations and prevented MillerCoors from obtaining the benefits and cost savings an integrated SAP solution would provide. In addition, HCL had failed to provide an acceptable plan for the remainder of the program, undermining any confidence MillerCoors had that HCL could fulfill its commitments going forward.

44. Within ninety days of MillerCoors' termination notice, on September 16, 2016, MillerCoors identified in writing additional failures in HCL's Services and Deliverables that would need to be remediated by HCL or a new supplier.

11

## COUNT I
## BREACH OF CONTRACT

45. For its Paragraph 45, MillerCoors restates and realleges Paragraphs 1 through 44 as if fully set forth herein.

46. The Agreement is a valid and enforceable agreement.

47. MillerCoors complied with any and all of its express or implied obligations under the Agreement.

48. HCL failed to perform its express and/or implied obligations under the Agreement.

49. For example, HCL agreed that it would "provide and deliver to MillerCoors each Deliverable described in a Work Order (i) on or before the due dates therefor as specified in such Work Order and (ii) in compliance with the requirements for each such Deliverable under this Agreement and the applicable Work Order." (MSA § 2.15.)

50. HCL covenanted that it would "recruit, hire, train and assign an adequate number of personnel to perform the Services" and that such personnel "shall be properly educated, trained and qualified and shall possess the proper specialized skills and experience commensurate with the Services." (MSA § 3.4.1.) HCL committed to "from time to time as requested by MillerCoors and at least quarterly provide MillerCoors with a written staffing plan . . .." (Id.) HCL further agreed to "maintain staffing levels as necessary to properly perform Suppliers obligations under this Agreement." (MSA § 3.4.2.)

51. HCL also represented that "Supplier shall perform the Services at levels of accuracy, quality, completeness, timeliness, responsiveness, resource efficiency and productivity that are equal to or higher than the accepted industry standards of first tier Suppliers of services that are similar to the Services and, in any event, that are at least equal to the levels at which such services were performed prior to the date hereof." (MSA § 2.16.1.) HCL agreed that "its current

technologies and processes shall remain consistent with (i) the best practices of leading Suppliers of services that are the same as or similar to the Services, and (ii) the objectives and competitive needs of MillerCoors and its Affiliates." (MSA § 2.13.1.)

52. HCL provided MillerCoors the assurance that "Supplier shall develop and implement quality assurance and internal controls, including implementing tools and methodologies, to ensure that the Services are performed in an accurate and timely manner, in accordance with this Agreement." (MSA § 2.20.) Among other things, HCL represented that it would "ensure regular internal control self-assessments," (MSA § 2.20.2), and "maintain an internal audit function sufficient to monitor the processes and systems used to provide the Services." (MSA § 2.20.3).

53. HCL agreed to follow its internal development methodology (HCL's iGDM development methodology) as the execution methodology for the project. (Work Order No. 1-3 § 9.2.)

54. HCL further agreed to take lead responsibility for certain Program Management activities, as set forth in Appendix I to Work Order No. 1-3, including but not limited to the development and review of project plans and the assurance of adequate staffing, and further agreed to provide associated Program Management and Governance Deliverables, as set forth in Appendix J to Work Order No. 1-3, including but not limited to creating and maintaining Detailed Project Plans, Stage Gate Materials, Production Readiness Reviews and Operational Readiness Reviews.

55. HCL agreed that "[t]ime is of the essence in the performance of the obligations of Supplier hereunder." (MSA § 17.18.)

56. HCL breached the Agreement by, at least, (1) failing to provide and deliver to MillerCoors each Deliverable described in Work Order No. 1-3 on or before the due dates therefor; (2) failing to provide and deliver Deliverables in compliance with the requirements for each such Deliverable under the MSA and Work Order No. 1-3; (3) failing to staff the project with an adequate number of skilled personnel to perform the Services and maintain staffing levels as necessary to properly perform HCL's obligations; (4) failing to provide the Services at levels of accuracy, quality, completeness, timeliness, responsiveness, resource efficiency and productivity that are equal to or higher than the accepted industry standards of first tier Suppliers and develop a system consistent with the best practices of leading Suppliers; (5) failing to implement and adhere to appropriate project methodology; and (6) failing to perform adequate Program Management and quality assurance services.

57. The MSA gives MillerCoors the right to terminate the Agreement or any one or more Work Orders for cause for HCL's material breach of "any term, provision, representation or warranty of this Agreement or its obligations hereunder, and if curable, such breach is not cured to MillerCoors' reasonable satisfaction within fifteen (15) Business Days after MillerCoors provides Supplier with written notice thereof," (MSA § 15.4.1.b), or for "numerous or repeated breaches by Supplier of its obligations under this Agreement which collectively constitute a material breach by Supplier of its obligations under this Agreement and such breach is not cured to MillerCoors' reasonable satisfaction within ten (10) Business Days after MillerCoors provides Supplier with written notice thereof." (MSA § 15.4.1.j.)

58. MillerCoors notified HCL of its breaches of the Agreement in its March 8, 2016 and June 20, 2016 letters. The material breaches that were curable were not cured within fifteen Business Days of MillerCoors' notice. To the extent HCL's various breaches constitute numerous

14

or repeated breaches which collectively constitute a material breach, HCL did not cure these breaches within ten Business Days of MillerCoors' notice.

59. The MSA further provides MillerCoors the right to terminate the Agreement for cause "immediately upon the failure of Supplier to meet a Critical Service Level for (i) three (3) consecutive months or (ii) four (4) times in any given twelve (12) month period," (MSA § 15.4.1.f), and "immediately upon the incurrence by Supplier of Service Level Credits equal to the maximum Service Level Credits that may be provided pursuant to any Service Level Schedule in a given month." (MSA § 15.4.1.g.)

60. HCL failed to achieve Critical Service Levels, including, at least, Critical Service Levels 8.9.1 (Schedule Adherence), 8.9.5 (Resource Onboarding – Onshore) and 8.9.6 (Project Satisfaction), for three consecutive months and/or four times within a twelve month period. In addition, HCL incurred Service Level Credits equal to the maximum Service Level Credits in multiple months.

61. HCL further provided MillerCoors an express warranty that "[t]he Services will be performed in a timely, competent and professional manner, and in accordance with all of the requirements of this Agreement and any Work Order. In addition, Supplier will use adequate numbers of qualified individuals with suitable training, education, experience, and skill to perform the Services." (MSA § 12.1.2.)

62. HCL, however, failed to perform the Services in a timely, competent and professional manner, and in accordance with all the requirements of the MSA and Work Order No. 1-3. Likewise, HCL failed to use adequate numbers of qualified individuals with suitable training, education, experience, and skill to perform the Services.

63. HCL provided MillerCoors the further express warranty that "[f]or a period of ninety (90) days from the expiration or termination of a Work Order pursuant to which Supplier furnished a Deliverable to MillerCoors; (a) such Deliverable will include all of the elements, features and functionality described in any Work Order; (b) such Deliverable will meet all requirements for such Deliverable as provided for in such Work Order; and (c) such Deliverable will reflect professional quality standards and be free from any material defects." (MSA § 12.1.3.)

64. In its termination notice and within ninety days of termination of Work Order No. 1-3, MillerCoors notified HCL in writing of deficiencies in HCL's Deliverables. HCL failed to cure the deficiencies.

65. HCL's actions in breach of its obligations to MillerCoors constitute intentional conduct, gross negligence or willful misconduct because HCL demonstrated an utter indifference and conscious disregard for the impending danger and harm its actions would cause to MillerCoors.

66. As a result of HCL's breaches, MillerCoors has suffered damages in an amount to be proven at trial in excess of $100,000,000.

WHEREFORE, MillerCoors LLC respectfully requests that this Court enter judgement in favor of MillerCoors LLC and against HCL Technologies Limited and HCL America, Inc., award MillerCoors LLC compensatory damages in an amount to be determined at trial in excess of $100,000,000, prejudgment interest and costs, and grant any other further relief that this Court deems equitable and just.

## **JURY DEMAND**

Plaintiff MillerCoors LLC hereby demands a trial by jury as to all appropriate claims pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure.


Dated: March 13, 2017  Respectfully submitted,

**MILLERCOORS LLC**


By:  /s/ George R. Spatz
     One of Its Attorneys


George R. Spatz (ARDC No. 6278494)
Amy Starinieri Gilbert (ARDC No. 6317954)
MCGUIREWOODS LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601
312.849.8100

*Attorneys for MillerCoors LLC*